CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 0 7 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 7:13CR00038-2 |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| DOMINIQUE MAURICE JONES, | ) | By:  Michael F. Urbanski |
| Defendant. | ) | Chief United States District Judge |

Following a six-day trial, defendant Dominique Maurice Jones was found guilty of conspiracy to distribute 28 grams or more of crack cocaine and sentenced to 280 months in prison.[1]  He filed a motion and amended motion to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255, raising multiple claims of ineffective assistance of counsel.  The government responded and Jones replied.  The court appointed habeas counsel, who filed a consolidated amended § 2255 motion.  Following an evidentiary hearing and after review of the record and briefs, the court concludes that Jones has not raised any meritorious claims.  Accordingly, the court will **GRANT** the United States' motion to dismiss and **DISMISS** Jones' § 2255 petition.

## I. BACKGROUND

On September 26, 2013, a federal grand jury sitting in Roanoke, Virginia charged Jones and five codefendants in a one-count superseding indictment with conspiracy to distribute and possess with the intent to distribute 280 grams or more of a mixture or

---

[1] This case was tried before the honorable Samuel G. Wilson, who also sentenced Jones.  Judge Wilson has now retired and so the case has been assigned to the undersigned.

substance containing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846. Jones was appointed trial counsel. There were some negotiations regarding a plea deal but an agreement was never reached. The government originally offered Jones a deal in which he would agree to plead guilty to conspiracy to distribute 280 grams or more of crack cocaine with the addition of various enhancements. Mot. Amend Comprehensive Am. Pet. Pursuant § 2255 ("Am. § 2255 Mot."), ECF No. 564, Ex. 3. While the plea offer did not provide for a specific sentence, it is likely that Jones would have faced a potential advisory guideline range of 324 to 405 months' incarceration.

On the eve of trial, counsel obtained an oral Rule 11(c)(1)(C) plea offer from the government for a ten-year term of incarceration. She drafted a letter to Jones outlining the terms of the agreement and met with Jones to discuss the offer. Trial counsel wrote "to confirm that I recommend that you accept this plea." Resp. Opp. Mot. Dismiss ("MTD Opp.") Ex. 1 at 1, ECF No. 518 ("Letter"). Counsel noted that she thought that a jury would find Jones guilty of conspiracy to distribute 280 grams of crack cocaine. Id. She explained that if he were to be found guilty, he faced a possible advisory guideline range of, at minimum, 235 to 293 months, but that he could receive as much as 30 years to life imprisonment. Id. at 1–2. Trial counsel closed the letter by reiterating, "I strongly recommend that you accept the plea offer. . . ." Id. at 2. Jones refused to accept the plea offer.

On January 21, 2014, Jones and four codefendants proceeded to trial.[2] The government argued that Jones, along with his brother, Oshay Jones, ran a cocaine trafficking

---

[2] One codefendant, Joshua Tyree Poindexter, pleaded guilty and testified at trial as the prosecution's main witness.

conspiracy. At trial, Jones' counsel argued that Jones was not part of the conspiracy. In addition, counsel reminded the jury that it must decide whether "the government has proven beyond a reasonable doubt that Dominique Jones is guilty of the crime alleged in the indictment, nothing else, the crime alleged in the indictment. It alleges that he was involved in a conspiracy to distribute 280 grams or more of crack cocaine." Day 6 Tr. Trans. 32, ECF No. 404. Over trial counsel's objection, the jury was not instructed that "an element of the offense charged was that the weight involved in the conspiracy was more than 280 grams of cocaine base." Mot. New Trial 2, ECF No. 291. The jury verdict form did require the jury to decide, first, whether Jones was guilty of the conspiracy and, if so, whether the conspiracy involved 280 grams or more of crack cocaine. Verdict, ECF No 273. In addition, over defense objection, the court, sua sponte, submitted to the jury a lesser included offense question. In the event that the jury concluded that the conspiracy did not involve 280 grams or more of crack cocaine, the verdict form asked the jury to decide whether the conspiracy involved 28 grams or more of crack cocaine. Id. The jury found Jones guilty of the conspiracy and the lesser included offense: that the conspiracy involved 28 grams or more of crack cocaine. Id. The jury found Jones not guilty of the indicted drug weight of 280 grams or more of crack cocaine, however. Id.

Probation prepared a presentence investigation report (the "PSR") in anticipation of sentencing. The PSR recommended a total offense level of 41, which included a two-point enhancement for possession of a firearm, a two-point enhancement for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood, and a three-point enhancement for being a manager or supervisor. PSR ¶¶ 53, 54, 56 & 61, ECF No. 345.

The PSR provided for a criminal history category of V, resulting in an imprisonment range of 360 months to life. Id. ¶ 113. Because the jury found Jones not guilty of the 280 gram drug weight, however, the maximum term of imprisonment that he faced was 40 years. As a result, the PSR recommended an advisory guideline range of 360 to 480 months' incarceration.

Trial counsel made numerous objections to the PSR, including an objection to the drug weight attributed to Jones as a member of the conspiracy, the possession-of-a-firearm enhancement, the criminal-livelihood enhancement, the managerial-role enhancement, his criminal history, and various factual issues. Id. at 30–32. In addition, trial counsel filed a sentencing memorandum. In it, she argued that Jones should be held accountable for between 154.96 and 168.96 grams of crack cocaine because he was not involved in the conspiracy for its entire duration, that the criminal-livelihood enhancement should not apply because there was no evidence that Jones derived the necessary income from drug sales, that a two-level enhancement for his leadership role in the offense would be sufficient, and that his criminal history category should have been IV, as the PSR incorrectly counted juvenile offenses. Sent. Mem. 2–5, ECF No. 323.

On June 23, 2014, the court held a sentencing hearing and counsel renewed her objections to the PSR, as explained in the sentencing memorandum. Sent. Hr'g Tr. 5–6, ECF No. 406. The court overruled the objections, adopted the PSR, and sentenced Jones to 280 months' imprisonment. Id. at 25, 37, 129. Specifically, the court concluded that there was sufficient evidence to establish that Jones was part of a conspiracy that involved at least 1.4 kilograms of crack cocaine, that the evidence of firearms belonging to coconspirators

4

was sufficient and that Jones' income derived mainly from drug sales. Id. at 25, 37. The court imposed a sentence below the advisory guideline range, however, after considering the relevant 18 U.S.C. § 3553(a) factors, including the nature of the crime, the characteristics of the defendant, and the need for deterrence and to protect the public. Statement Reasons 3, ECF No. 332.

Trial counsel filed a motion for acquittal and a new trial, arguing that the drug weight of 280 grams of crack cocaine was an element of the offense, on which the jury needed to be instructed. New Trial Mot. 1–2, ECF No. 291. In addition, counsel argued that because a jury found Jones not guilty of the crime charged—conspiracy to distribute 280 grams or more of crack cocaine—he must be acquitted. Acquittal Mot. 2, ECF No. 290. These motions were denied.

Jones appealed, arguing that the trial court erred by failing to instruct the jury that the drug weight was an element of the offense, sua sponte submitting to the jury a special verdict form that permitted it to make an alternative drug weight finding, admitting audio recordings of jailhouse conversations, ordering forfeiture and imposing an unreasonable sentence. United States v. Jones, 622 F. App'x 204 (4th Cir. 2015). The Fourth Circuit affirmed. Id. at 209.

Jones timely filed this § 2255 motion, asserting that trial counsel erred by: (1) providing erroneous advice that caused Jones to "miss out on a plea agreement;" (2) failing to challenge the drug quantity attributed to Jones in the PSR at sentencing; (3) failing to argue that the drug quantity attributed to him should not include any drug activity occurring before he joined the conspiracy; (4) failing to challenge as unreliable

5

statements in the PSR dealing with drugs and weapons; (5) failing to argue that the evidence did not support a firearm enhancement; and (6) failing to challenge the criminal-livelihood enhancement. Mot. Vacate Pursuant to § 2255 ("Mot. Vacate") 5–10, ECF No. 481. Jones filed a motion to amend his § 2255 petition, which was granted. Order, ECF No. 519. In it, Jones raised two additional claims related to his first claim for relief regarding deficient trial counsel advice, and argued that counsel erred by: (1) failing to explain the conspiracy charge against him; and (2) failing to explain the advantages and disadvantages of pleading guilty versus going to trial. Amend. § 2255 Mot. 2-6.

The government filed a motion to dismiss in response to the original § 2255, arguing, among other things, that Jones' assertion that counsel's deficient conduct caused him to miss out on a favorable ten-year plea offer was spurious because "[t]here was never any such plea agreement." Gov't Mot. Dismiss 4, ECF No. 508. Jones replied to the government's motion to dismiss and included the letter from trial counsel discussing the Rule 11(c)(1)(C) plea agreement for a ten-year term of incarceration. Letter 1. In response, the government admitted that although its records did not include a ten-year offer, trial counsel's letter "calls the government's reliance [on its records] into question," and conceded that a ten-year deal had been conveyed to trial counsel. Gov't Mot. Dismiss Amend. § 2255 at 3, ECF 526.

In light of this new revelation from the government, the court appointed habeas counsel for Jones and set an evidentiary hearing to explore the issues that Jones raised in his § 2255 motion and amended § 2255 motion, including whether trial counsel sufficiently advised Jones about the risk of going to trial. Prior to the hearing, habeas counsel filed a comprehensive amended § 2255 petition clarifying the ineffective assistance claim that Jones

previously raised regarding deficient trial counsel advice. Specifically, habeas counsel argued that trial counsel erred by (1) failing to inform Jones of the first plea offer; (2) telling Jones that he would be acquitted if the government failed to prove the indicted drug weight; (3) failing to inform Jones that the trial court had the authority to instruct the jury on lesser included offenses; (4) failing to inform Jones of the law of conspiracy; and (5) failing to explain the sentencing guidelines and standard of proof at sentencing. Am. § 2255 Mot. 12–13, ECF No. 564.

The court held an evidentiary hearing on April 25, 2018. Jones testified that trial counsel did not sufficiently explain the law of conspiracy, the United States Sentencing Guidelines, or the mandatory minimum sentence that he faced if found guilty. Evid. Hr'g Tr. 12–14, ECF No. 570. He stated that counsel never explained anything specific about the charge against him, the law, or sentencing issues. Id. at 16–17. But, Jones testified that trial counsel did tell him that in order to be found guilty, the government would have to prove that the conspiracy involved at least 280 grams of crack cocaine. Id. at 17. Jones testified that immediately prior to trial, trial counsel explained that the government was willing to offer him a ten-year plea deal but he never saw the letter from counsel outlining the terms of the agreement until he requested information on the ten-year deal from her in 2016. Id. at 19, 27–28. Jones decided not to accept the ten-year offer because he believed the witnesses who implicated him in the drug conspiracy were lying. Id. at 26. Jones stated that trial counsel told him that if the government did not prove that the conspiracy involved 280 grams of crack cocaine, then the jury would have to acquit him. Id. at 28, 37. As a result, he

did not understand how the jury could find him guilty of a conspiracy involving 28 grams of crack cocaine. Id. at 25.

Trial counsel also testified at the evidentiary hearing. She stated that she had no memory of talking to Jones about the possibility of being convicted of a lesser included offense but discussed with him the law of conspiracy and the evidence against him. Id. at 49, 73. Her strategy at trial was to try to prove that the conspiracy involved less than 280 grams of crack cocaine. Id. at 44–45. She stated that she considered the drug weight, which was set forth in the indictment, to be an element of the offense, which the government must prove and on which the jury must be instructed. Id. at 45. However, counsel also testified that she did not tell Jones that if the government could not prove that the conspiracy involved 280 grams he would be acquitted. Id. at 48. Trial counsel stated that she thought the evidence against Jones was overwhelming so she sought a more favorable plea deal from the government and strongly advised Jones to accept the ten-year Rule 11(c)(1)(C) plea offer. Id. at 46. Trial counsel stated that she left the letter outlining the deal with Jones overnight to consider, and came back the next day to find out whether he would accept the plea offer. Id. at 54–55. But Jones decided to proceed to trial. Id. at 55. Jones' request for relief under 28 U.S.C. § 2255 is now ready for adjudication.

## II. DISCUSSION

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to

collateral attack." 28 U.S.C. § 2255(a). Jones bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

### A.    Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to establish that his counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: He must show both that (1) counsel's performance fell below an objective standard of reasonableness; and (2) he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

9

## (1) Erroneous Trial Counsel Advice

Jones argues that his trial counsel gave him erroneous advice about what the government would have to prove in order to find him guilty of the indictment and how the law with regard to sentencing worked. Jones' amended § 2255 motion raises variations of this claim, as does counsel's comprehensive amended § 2255 petition. Specifically, Jones argues that counsel did not sufficiently explain to him the law of conspiracy, the perils of going to trial, the fact that a jury could still find him guilty even if it concluded that the conspiracy involved less than 280 grams of crack cocaine, and that a judge could sentence him based on his relevant conduct. Jones argued in his original § 2255 petition and at the evidentiary hearing that counsel told him that he could be found guilty only if the government proved that the conspiracy involved more than 280 grams of crack cocaine. Jones argues that had he understood that he could be convicted of a lesser-included offense, he would have accepted the ten-year plea agreement that the government offered, which did not include any enhancements. Jones' contention that counsel provided ineffective assistance by failing to adequately advise him about the risks involved in proceeding to trial is unavailing.

### a. *Failure to Inform Jones of First Plea Agreement*

Habeas counsel alleges in the comprehensive amended brief that trial counsel failed to convey to Jones the terms of the first plea agreement from the government. Am. § 2255 Mot. 12. At the evidentiary hearing, Jones, too, claimed that he had no knowledge of the original plea agreement. Although trial counsel could not recall whether she physically had the first plea agreement in hand when she met with Jones in their first meeting on June 28,

10

2013, she testified: "I think that I would have advised him that there was such a plea agreement and that it was—it would have had him facing a lot time under the sentencing guidelines, and that certainly at that point I would not have advised him to accept a plea agreement." Evid. Hr'g Tr. 41. Trial counsel explained that it was the practice of the Assistant United States Attorney "to send discovery with a plea agreement very, very soon, even after the arraignment. And so it would be my practice to take that discovery and either physically the plea agreement or not, and explain, you know, what the guidelines meant and what the guidelines were and how the grid works." Id. at 41–42. Moreover, there is no suggestion that Jones was ever interested in pleading guilty to conspiracy to distribute 280 grams of crack cocaine. There is no basis on this record to find ineffective assistance of counsel or resulting prejudice regarding the first plea agreement.

### b. *Explanation of Conspiracy*

Jones argues that trial counsel failed to "provide [him] with 'real notice' of the charge of conspiracy." Am. § 2255 Mot. 2. At the evidentiary hearing, he testified that trial counsel never talked with him about the law of conspiracy or explained to him the charge against him. Evid. Hr'g Tr. 17. The court does not find Jones' statements credible. Instead, considering the credibility of both witnesses, the consistency of their testimony, and the fact that the letter completely corroborated trial counsel's testimony on the ten-year plea deal, the court credits trial counsel's testimony that she did explain the law of conspiracy to Jones.

At the evidentiary hearing, trial counsel testified that she met with Jones five times before trial, and although she did not take notes at those meetings, it is her practice to discuss early on in the representation the charges against the defendant, the government's

11

evidence, and the sentencing guidelines exposure. Trial counsel testified that she informed Jones of the elements of conspiracy, what the government would need to prove for a jury to find him guilty of conspiracy, and that "it does not take very much" to prove involvement in a conspiracy. Id. at 49. Counsel testified that she reviewed with Jones the discovery pertaining to him, especially jailhouse recordings, and explained that if the government was able to prove any part of Jones' alleged involvement, that would be enough to prove the conspiracy charge. Nonetheless, counsel testified that Jones insisted on going to trial.

The court finds it incredible, as Jones argues, that experienced trial counsel wholly failed to explain the law of conspiracy to him, which was the one crime for which Jones was charged. She met with him numerous times prior to trial and Jones admits that she reviewed discovery with him. Id. at 13. Although she did not keep records of these meetings, the court finds that counsel explained to Jones the law of conspiracy; accordingly counsel's conduct did not fall below an objective standard of reasonableness. Strickland, 466 U.S. at 688.

### c. Advice about Advantages and Disadvantages of Going to Trial

Jones also argues, more generally, that counsel failed to adequately advise him about the advantages and disadvantages of going to trial, that she never advised him whether he should plead guilty, and that she never explained to him the nuances of sentencing. These claims are without merit.

Unlike with the disagreement over whether counsel explained conspiracy to Jones, there is no credibility determination here, as trial counsel's testimony is wholly corroborated by the letter she wrote to Jones about the ten-year plea offer from the government. Counsel

testified that she explained to Jones numerous times that based on the evidence against him, she believed that a jury would find him guilty and that he faced a very long sentence. She testified that she did everything she could to convince Jones to accept the Rule 11(c)(1)(C) plea offer of ten years because she thought he would receive a much longer sentence if he went to trial. Similarly, in the letter, trial counsel recommended that Jones accept the plea because, in her opinion, "the United States has evidence sufficient to convict you of the charge of conspiracy to distribute 280 grams or more of crack cocaine" based on the witnesses who would testify at trial, text messages and telephone recordings. Letter 1. Counsel further explained that she believed Jones' sentence exposure, were he to be found guilty, would be at a minimum 235 to 293 months but that his sentencing range could be as high as 30 years to life. Id. at 2. She explained that he faced a 10-year mandatory minimum sentence. Id. Counsel closed the letter by "strongly recommend[ing]" that he accept the plea. Id. Counsel explained at the evidentiary hearing that she "all but begged" him to take the plea offer. Evid. Hr'g Tr. 64. Counsel also explained that she went through the letter paragraph by paragraph with Jones. Id. at 56.

Jones claims that counsel told him about the ten-year plea offer but never gave him the letter. He claims that the first time that he saw the letter was in 2016, when he requested information about the 10-year plea offer from her. The court credits trial counsel's testimony that she visited Jones in jail prior to trial, explained the terms of the plea offer, and left the letter with him so that he could review it before making a decision about whether to proceed to trial. Counsel testified that she returned to the jail the next day to see whether Jones would accept the offer. Her records of jail visits support her testimony. In addition,

she testified that she does not have the original letter in her file, but only a copy, which also supports her claim that she left the original with Jones prior to trial.

Although counsel did not take notes of her meetings with Jones, the letter counsel wrote to Jones establishes that she advised him about the risk of going to trial. She implored him to take the ten-year plea offer because she thought it was Jones' best option, in light of the evidence against him. In addition, she testified that she explained to Jones about the sentencing guidelines and his potential sentencing exposure. Id. at 41. She noted that she usually takes the Sentencing Guidelines Manual with her to show defendants the sentencing chart. Id. at 41-42. Trial counsel could not remember if she specifically discussed relevant conduct with Jones, but she said that explained to him that if were convicted of any involvement, the probation officer can attribute to the conspiracy a drug weight based on witness testimony, even if the witnesses were not wholly reliable. Id. at 48-49. The court credits trial counsel's testimony and concludes that this explanation was sufficient to inform Jones of issues related to sentencing. Accordingly, Jones has not proven that trial counsel performance was deficient. Strickland, 466 U.S. at 687.

### d. Advice about Potential for Acquittal

Finally, Jones argues that counsel provided ineffective assistance because she told him that he would be acquitted if the government failed to prove that the conspiracy involved 280 grams of crack cocaine. Jones argues that had counsel correctly informed him about the possibility of a guilty verdict even without a finding of 280 grams of crack cocaine, he would have accepted the Rule 11(c)(1)(C) plea offer.

"During plea negotiations defendants are entitled to the effective assistance of competent counsel." Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted). "[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer." United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992). The Supreme Court has established that in determining ineffective assistance in the plea arena, courts should determine not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). This requires a defendant to establish that counsel committed "gross error." Id. at 772. The court must be mindful that "uncertainty is inherent in predicting court decisions." Id. at 771. As a result, strategic predications by counsel that turn out to be erroneous do not necessarily establish deficient performance. Lafler, 566 U.S. at 174.

At the evidentiary hearing, Jones testified over and over again that trial counsel told him that the government had to prove that the conspiracy involved 280 grams of crack cocaine for him to be found guilty. Counsel, on the other hand, testified that she never told Jones that he would be acquitted if the government failed to prove the indicted drug weight of 280 grams of crack cocaine. She testified that she never told him that she saw a path to acquittal because she believed the evidence against him was substantial. Trial counsel testified:

> But I feel like I did everything that I could to convince him to take the plea because I knew that if we went to trial, we would lose. I saw no pathway to win.
>
> I mean, yes, maybe we could not prove the 280 grams. But I never told him that if the government didn't prove 280 grams, he was going to walk out of

the courtroom, because I know that's not the law. I would have never told him that. . . .

Evid. Hr'g Tr. 47–48. Nonetheless, she also testified that, because of the way the indictment was drafted, she believed that the drug weight of 280 grams of crack cocaine was an element of the conspiracy offense. She drafted a jury instruction that included the 280 grams of crack cocaine as an element of the offense, but the court declined to give that instruction to the jury. Counsel also objected to the verdict form that the court provided to the jury, which allowed the jury to determine Jones' guilt of the lesser included offense of 28 grams or more of crack cocaine. Counsel did not have an independent recollection of discussing lesser included offenses with Jones, but was adamant that she never suggested acquittal was a viable outcome. Counsel further testified:

> But I would have said, "If you get convicted of anything, then the probation officer is going to put together a presentence report and put all of this weight on you, and it doesn't matter if those people are lying. The probation officer is going to believe each and everyone one of them." No offense to probation. "And then you're going to get two levels for a firearm, and you're going to get at least two levels as a leader or organizer." And I think he wound up with four. So, anyway, I did try to convince him to take that plea.

Id. at 48–49.

In sum, Jones has not established ineffective assistance. First, he cannot show that counsel provided gross misadvice. Cf. Strader v. Garrison, 611 F.2d 61, 65 (4th Cir. 1979) (recognizing that when counsel provides gross misadvice on which the defendant relies, the counsel has provided deficient performance resulting in ineffective assistance). Counsel warned Jones about the perils of going to trial over and over again. Her letter to Jones regarding the ten-year plea offer supports this. She strongly advised Jones to accept the Rule 11(c)(1)(C) offer because he faced a much higher sentence if he proceeded to trial and was

16

found guilty. Nonetheless, Jones decided that his best option was to proceed to trial even in light of counsel's warnings.

This is not a case where counsel affirmatively provided incorrect advice, or miscalculated the Sentencing Guidelines, and therefore, Jones' sentence exposure. Cf. Day, 969 F.2d at 43 (noting that to succeed in a § 2255 motion, the defendant had to establish that counsel's advice was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer"). To the contrary, counsel explained that she thought the evidence against Jones was substantial and that he would be found guilty. She strongly advised that he accept the plea offer. At the hearing, trial counsel denied telling Jones that he would be acquitted if the government did not prove that the conspiracy involved 280 grams of crack cocaine.

> Q: If Mr. Jones had come to you and said, "They can't prove 280 grams, therefore, I have to be acquitted," what would you have said?
>
> A: I would have said that that was wrong, that even if they prove less than 280 grams, 28 grams or more, even less than 28 grams, if he was convicted of anything, then all the other weight could come in with regard to sentencing. . . .
>
> THE COURT: [Jones] seems to believe that you told him that if the government didn't prove 280 grams, that he would be acquitted. That's what he has testified to over and over and over again.
>
> THE WITNESS: I know.
>
> THE COURT: Where could he have gotten that idea?
>
> THE WITNESS: What I believe—I don't know. I never told him that, Your Honor. I would have never told him that. If he had that idea, it came from someone else, whether it was Oshay, whether it was Oshay's—what advice Oshay was getting to what he thought he was getting or if he—I don't know. He didn't get it from me.

Evid. Hr'g Tr. 52–53. Plainly, counsel's advice to Jones was not so erroneous that she "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

Counsel cannot be faulted because the trial court rejected the argument that the 280-gram amount be considered an element of the offense. Counsel testified:

> Well, I thought that the drug weight should have been in the instruction, in the elements instruction. And the instruction—my recollection is that the instruction provided by the government did not include drug weight at all, and we presented an instruction that—and I may have even drafted it—that included the 280 grams, in hopes that, you know, that the jury would then say, well, they haven't proven 280 grams so we're going to dismiss.

> And the judge, I specifically remember he kept saying, well, give me a waterfall, give me a waterfall. Well, we didn't want them to have a waterfall because we wanted them to say no to the 280 grams. Of course, the verdict form had a, basically, waterfall. And that's how—that's what happened with that.

Evid. Hr'g Tr. 45. Counsel's strategic approach in arguing that the drug weight was an element of the offense based on the wording of the indictment was not unreasonable, although ultimately unsuccessful. McMann, 397 U.S. at 771.

Further, Jones cannot establish prejudice, or that he would have accepted the plea had counsel informed him that he could be convicted of a lesser included offense. Counsel testified that Jones' strategy from the beginning was to proceed to trial. Habeas counsel argued that Jones never suggested that he was actually innocent, which supports his claim that he would have accepted the ten-year plea offer had he understood that he could be found guilty of conspiracy involving a lesser drug weight. Jones, himself, averred that had counsel "explained to me that I could possibly still be punished even if I was acquitted of the

drug weight, I would have accepted the plea offer she presented to me." Mot. Vacate Ex. 3, at 1.

Although Jones claims he would have accepted the plea, Jones' testimony at the evidentiary hearing and in an affidavit that he provided in support of his reply brief show that he decided to go to trial because he did not believe that he was guilty of involvement in the conspiracy at all. He testified that he told trial counsel "the witnesses was lying about everything when they said that they had bought from me, that they was just lying. I told her how could they prove that I was in a conspiracy?" Evid. Hr'g Tr. at 15. Moreover, the affidavit that he attached to his reply brief makes clear that he believed himself to be actually innocent of the charged crime because he was not involved in a drug conspiracy: "I advised [trial counsel] that I have not participated in a 'so-called' conspiracy." Amend. § 2255 Mot. Ex. 3 ¶ 3. This comports with trial counsel's testimony at the evidentiary hearing in which she stated that prior to trial Jones said that the government's witnesses were lying—not about the amount of drugs that they had purchased—but about knowing him at all. Evid. Hr'g Tr. at 80.

The court credits trial counsel's testimony that Jones was determined to go to trial. "[C]ourts should be wary of [claims like Jones'] because defendants will always want the best of both worlds: the chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails." Day, 969 F.2d at 46 n.9. Accordingly, Jones has failed to present credible, non-conclusory evidence that he would have accepted the proffered plea had counsel advised him that he could be found guilty of involvement in the conspiracy even if the jury found him not guilty of the charged drug weight. Merzbacher v. Shearin, 706 F.3d 356, 366

(4th Cir. 2014) (noting that in order to demonstrate prejudice in a § 2255 motion, a defendant must establish that he would have accepted the offered plea).[3]  Accordingly, Jones has not established deficient performance or prejudice.  Strickland, 466 U.S. 687.

(2) Failure to Object to Drug Weight

Jones also argues that trial counsel failed to object to the PSR's calculation of drug weight and the evidence on which it relied.  This is not true.

Although the jury concluded that Jones was guilty of conspiracy to distribute between 28 and 279 grams of crack cocaine, the PSR concluded that, based on relevant conduct, Jones, as a member of the conspiracy, was responsible for distribution of 1.4 kilograms of crack cocaine.  PSR ¶ 46.  Contrary to Jones' claim, his trial counsel vigorously opposed the drug weight calculation.  In her sentencing memorandum, she argued that the only relevant and reliable evidence of Jones' relevant conduct suggested that he should be held accountable for no more than 169 grams of crack cocaine.  Sent. Memo. 2, ECF No. 323. She also argued that there was no evidence that Jones was involved in the conspiracy from the beginning, but rather was implicated later.  Finally, she asserted that the PSR had "double count[ed]" because money received for drugs was converted into drug weight but the drugs sold were also included in the drug weight calculation.  Id. at 3.

At sentencing, objections were made to the drug weight.  Jones' counsel reiterated that she was relying on the objections made in the sentencing memorandum.  In addition, counsel for codefendants, sentenced at the same time as Jones, challenged the drug weight

---

[3] A defendant must also establish that "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." Merzbacher, 706 F.3d at 366. Notwithstanding the government's initial claim that a ten-year plea offer did not exist, the government admitted at the evidentiary hearing that the ten-year offer had been discussed and had Jones agreed to accept it, the government would have memorialized the deal in writing and presented it to the court for approval. Evid. Hr'g Tr. 7.

attributed to all members of the conspiracy, arguing that the testimony at trial did not support the PSR drug weight calculation and that the jury's determination that the defendants were not guilty of conspiracy to distribute 280 grams of crack cocaine should limit the court's drug weight determination. Sent. Hr'g Tr. 21–22. However, the court overruled the objections "[i]n terms of the question of quantity as to Dominque [Jones], Kearrah, and Oshay . . . essentially for the reasons stated in the [PSR]." Id. at 25. It concluded that the "1.4 kilograms of crack cocaine that was seized during the course of the conspiracy, that was just seized alone, is really a conservative . . . estimate of the amount of crack cocaine involved, and it establishes a base offense level of 34." Id.

Counsel appealed the issue of the drug weight calculation to the Fourth Circuit. The Fourth Circuit affirmed the court's drug weight finding, concluding that Jones had "fail[ed] to affirmatively show that the court relied on unreliable information" and that "[e]vidence in the record satisfied the minimum threshold to warrant a base offense level of 34 under U.S.S.G. § 2D1.1(c)(3)." Jones, 622 F. App'x at 208. Because the drug weight issue was squarely addressed and rejected by the Fourth Circuit on direct appeal, and Jones has failed to demonstrate any intervening change in law since such rejection, this claim is without merit. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) (concluding that because there was no change in the law warranting reconsideration of claims that were "already addressed and rejected on direct appeal," the district court correctly held that the defendants "cannot relitigate these issues" through asserting them in a § 2255 motion). Because counsel did challenge the drug weight attributed to Jones, Jones cannot establish that his counsel's performance was deficient. Strickland, 466 U.S. at 687.

### (3) Failure to Object to Jones' Late Entry into the Conspiracy

Next, Jones argues that trial counsel erred because she did not object to the PSR's and the court's conclusion that he participated in the conspiracy from the beginning. Counsel did, in fact, make this argument. Counsel argued in her sentencing memorandum that "Dominique should not be held accountable for the distributions of co-defendants prior to his incarceration because the evidence clearly shows that he did not enter the conspiracy prior to that time." Sent. Memo. 3. She reiterated that she was relying on her sentencing memorandum at the sentencing hearing.

Contrary to Jones' assertions and over his counsel's objections, however, the court found that Jones was involved in the conspiracy from at least November 2007 until May 2013. Sent. Hr'g Tr. 25. The court went on to support its finding that the conspiracy involved 1.4 kilograms of crack by concluding that the size and scope of the conspiracy was reasonably foreseeable to Jones. Id. The Fourth Circuit affirmed the trial court's drug weight determination. Jones, 622 F. App'x at 208. Accordingly, Jones cannot establish either deficient performance or prejudice. Strickland, 466 U.S. at 687.

### (4) Failure to Object to Unreliable Statements in PSR

Next, Jones argues that counsel failed to object to unreliable statements in the PSR used to support the drug weight attributed to him.[4] As explained above, however, counsel did argue that unreliable witnesses had provided the evidence on which the PSR relied in determining drug weight: "Finally, the calculation includes historical drug weight provided by

---

[4] Jones also argues that counsel failed to object to unreliable statements from witnesses used to support the firearm enhancement. Jones challenges the firearm enhancement in his fifth assignment of error, however, so the court will address issues related to the firearm enhancement in the next section.

unreliable 'snitch-type' witnesses." Sent. Memo 3. The district court overruled the objection. The same argument was made on appeal, but the Fourth Circuit, too, concluded that Jones had failed "to affirmatively show that the court relied on unreliable information" in determining the drug weight attributable to the conspiracy. Jones, 622 F. App'x at 208. As a result, Jones cannot show that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688.

(5) Failure to Object to Firearm Enhancement

Next, Jones argues that his counsel erred by failing to object at sentencing that the evidence was insufficient to support the two-point firearm enhancement recommended in the PSR or to prove that anyone in the conspiracy possessed a firearm. This argument lacks merit.

Jones' counsel did not object to the firearm enhancement, presumably because Jones was found with firearms in close proximity on numerous occasions. Counsel for a codefendant raised this objection, arguing that the PSR did not conclude that any particular defendant possessed a gun, but merely noted that pursuant to search warrants, firearms were found "with a group of people," and that there was no evidence that firearms were used "in the furtherance of the conspiracy." Sent. Hr'g 7. In response, the government reviewed the evidence that supported a firearm enhancement. The evidence largely focused on Jones, who the government had labeled the "enforcer" or muscle behind the conspiracy: On December 18, 2007 and November 28, 2012, Jones was present during searches in which handguns and crack cocaine were found; on May 4, 2009, Jones was arrested and a handgun

was found next to him; on August 14, 2012, police stopped Jones and a gun was found in his car, among other evidence. Id. at 12–13.

The court did not credit the arguments from trial co-counsel and concluded that "the evidence was that there were these firearms that are indicated in these various paragraphs in the presentence report, that were showing up in connection with all sorts of searches and where drugs were in proximity, and at places that were – where the defendant was present." Id. at 10; see United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994) (concluding that weapons carried by a coconspirator are attributable to the defendant when such possession is foreseeable and it is often foreseeable that firearm possession accompanies illegal drug sales). In addition, the gun-enhancement issue was raised on appeal, and the Fourth Circuit concluded that the district court had not erred in applying it. Jones, 622 F. App'x at 208; Linder, 552 F.3d at 396 (noting that a defendant cannot successfully raise in a § 2255 motion the same challenge that has been adjudicated on direct appeal). As a result, Jones cannot establish deficient performance. Strickland, 466 U.S. at 687.

(6) Failure to Challenge the Criminal-Livelihood Enhancement

Next, Jones argues that counsel failed to challenge the criminal-livelihood enhancement. This is not true. At sentencing, counsel argued that the criminal livelihood enhancement should not apply to Jones because there was no evidence that he had earned the requisite income from drug activity. Sent. Hr'g Tr. 32. The court, however, rejected this argument and concluded that the evidence showed that the codefendants were engaged in drug trafficking "as a livelihood" and not as a "sideline" business. Id. at 37. Jones also

appealed this enhancement to the Fourth Circuit, which affirmed. <u>Jones</u>, 622 F. App'x at 208.

Because counsel did raise this issue, Jones cannot establish that counsel provided deficient performance. <u>Strickland</u>, 466 U.S. at 687. Moreover, because the Fourth Circuit considered and decided the issue, Jones may not successfully raise the issue on collateral review. <u>Linder</u>, 552 F.3d at 396.

### III.

For the reasons stated, the court **GRANTS** the government's motions to dismiss, ECF No. 508 & 526, and **DISMISSES** Jones' motion and amended motions to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 481, 531 & 564. Because Jones has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

**ENTER:** This 7 day of June, 2018.

/s/ Michael F. Urbanski

Chief United States District Judge