IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 7:13-cr-00038 |
| v. | ) | |
| | ) | |
| DOMINIQUE MAURICE JONES, | ) | |
| | ) | By:   Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on three pending pro se motions concerning defendant Dominique Maurice Jones's[1] criminal judgment and sentence imposed on June 23, 2014. J., ECF No. 330. In ECF No. 779, Dominique asks the court to reconsider its earlier denial of a a motion to reduce his sentence under United States Sentencing Guideline ("USSG") Amendment 782 and to appoint counsel. In ECF No. 781, Dominique moves the court pursuant to Rule 36 of the Federal Rules of Criminal Procedure to correct a clerical error in his Presentence Investigation Report ("PSR") regarding the drug weight attributed to him associated with crack cocaine sales to trial witness Brandon Snead.[2] In ECF No. 786, Dominique asks the court to rule on his prior motions. The government has not responded to any of these motions.

Dominique and Oshay Jones were tried together in January 2014, and a jury found them both guilty of Count One, Conspiracy to Distribute More Than 28 Grams of Cocaine

---

[1] Throughout this order, the court refers to defendant by his first name to distinguish him from his brother and co-defendant, Oshay Terrell Jones.
[2] This issue is referred to herein as the Snead Drug Weight Claim.

Base, ECF Nos. 330 and 335. The court determined that both Dominique and Oshay Jones had sentencing guidelines ranges of 360 to 480 months,[3] and varied downwards to sentences of 280 months for each.[4]

## I.

Both Dominique and his brother Oshay have had substantial post-conviction proceedings in this court and the Fourth Circuit Court of Appeals. Dominique has unsuccessfully challenged his 280-month sentence conviction under 28 U.S.C. § 2255 and sought a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and USSG Amendment 782. See Mem. Op. and Order, ECF Nos. 576 and 577; Order, ECF No. 588; Mem. Op. and Order, ECF Nos. 771 and 772; Order, ECF No. 773; and Order ECF No. 777.

After a great deal of procedural wrangling, Dominique's brother Oshay Jones had his sentence reduced to 168 months at resentencing after the court granted a Federal Rule of Civil Procedure 60(b) motion as to his § 2255 habeas corpus petition on the Snead Drug Weight Claim. See Mem. Op. and Order, ECF Nos. 684 and 685, Am. J., ECF No. 748.[5]

After the Rule 60(b) ruling, grant of habeas relief as to the Snead Drug Weight Claim, and resentencing of his brother Oshay Jones, Dominque sought a similar sentence reduction. However, for the reasons stated in a Memorandum Opinion entered on June 1, 2021, ECF

---

[3] Dominique had a Total Offense Level of 41 and a Criminal History Category of V. Oshay had a Total Offense Level of 42 and a Criminal History Category of I. Although the guideline range for each of those levels is 360-life, Dominique and Oshay's guideline range topped out at 480 months, the statutory maximum sentence under 21 U.S.C. § 841(b)(1)(B).
[4] Both the 2014 trial and sentencing were conducted by U.S. District Judge Samuel G. Wilson.
[5] At resentencing, the court lowered Oshay Jones's Total Offense Level to a 36, and although his Criminal History Category was increased to II to correct an error at his original sentencing, his advisory sentencing guidelines dropped to a range of 210 to 262 months. As did the court at the original sentencing, the court at resentencing varied downwards to reach the 168 month sentence.

No. 771, the court found that Dominque had not previously raised the Snead Drug Weight Claim and was not eligible for Rule 60(b) relief. The Fourth Circuit denied Dominque's motion under 28 U.S.C. § 2244 for an order authorizing the district court to consider a second or successive application for relief under 28 U.S.C. § 2255. Order, ECF No. 777. The district court also denied Dominique's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and United States Sentencing Guidelines Amendment 782 because application of Amendment 782 did not lower his guidelines range. Order, ECF No. 773.

## II.

In the pending motion to correct clerical error, ECF No. 781, Dominique once again seeks to challenge his 280 month sentence, this time claiming that probation's overstatement of the amount of crack cocaine purchased by Brandon Snead in his PSR was a clerical error which may be remedied under Federal Rule of Criminal Procedure 36.

It is well established that "the trial court has the power to correct mistakes made in court records in order to make the records consistent with the judgment of the court." Johnson v. Mabry, 602 F.2d 167, 170 (8th Cir. 1979) (citing Hill v. United States ex rel. Wampler, 298 U.S. 460, 464 (1936). The Fourth Circuit has held that a PSR "constitutes an 'other part of the record' amenable to correction under Rule 36." United States v. Vanderhorst, 927 F.3d 824, 826 (4th Cir. 2019) (citing United States v. Mackay, 777 F.3d 195, 198 (5th Cir. 2014)).

Federal courts have narrowly proscribed clerical error subject to Rule 36. "An inconsistency between an oral pronouncement and the written sentence is a clerical error within the scope of Rule 36." United States v. McClain, 16 F.4th 487, 490 (7th Cir. 2021)

(citing United States v. Medina-Mora, 796 F.3d 698, 700 (7th Cir 2015)). "When a written judgment fails to correct an 'unambiguous oral pronouncement, Rule 36 allows for correction of such a clerical error at any time.'" Id. at 491 (quoting Medina-Mora, 796 F.3d at 700). Rule 36, however, does not apply to errors made by the court itself. United States v. Daddino, 5 F.3d 262, 264-65 (7th Cir. 1993). The Daddino court traced the history of Rule 36.

> The Advisory Committee Notes to Rule 36 state that "[t]his rule continues existing law," citing Rupinski v. United States, 4 F.2d 17 (6th Cir.1925). In Rupinski, count 3 of an indictment had been dismissed. However, "the journal of the court, through an error on the part of the clerk, recite[d] the dismissal of count 2." Id. at 18. The Sixth Circuit affirmed the correction of the record under the "well-recognized exception in the case of mere clerical errors." Id. More recent cases and commentary flesh out the parameters of Rule 36 and demonstrate that this exception does not apply to errors made by the court itself. For instance, in United States v. Guevremont, the district court attempted to use Rule 36 to correct an error it made when imposing a sentence. 829 F.2d 423, 424 (3rd Cir.1987). The Third Circuit held that because the "errors were made in the oral order itself, they arose from an oversight or omission by the court, rather than through a clerical mistake, and thus are not within the purview of Rule 36." Id. at 426. Other authorities are in accord. E.g., United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990) (substantive alterations in sentences held "not within the ambit of Rule 36"); United States v. Kaye, 739 F.2d 488, 491 (9th Cir.1984) ("if *the* error or omission is indeed a judicial error, rather than a clerical mistake, it is not within the purview of [Rule 36]"); CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d § 611 (1982) ("[a]n error arising from oversight or omission by the court, rather than through a clerical mistake, is not within the purview of [Rule 36]"). The omission of the costs of incarceration and supervision from Daddino's sentence stems from an oversight of the district court itself. Adopting the view of the above authorities, we hold that Rule 36 does not provide authority for the district court's December 9th order.

Id. In United States v. Bennett, 423 F.3d 271, 278 (3rd Cir. 2005), the Third Circuit explained:

> In most cases, an error made by a court in imposing its oral sentence will not be a clerical error within the meaning of Rule 36. "Rule 36 does not provide jurisdiction to correct an alleged error committed by a judge at sentencing, regardless of whether that correction is designed to vindicate an unstated assumption of the sentencing court." 26 Moore et al., supra, ¶ 636.03[1][c]; see also 3 Wright et al., supra, § 11, at 806–07 ("An error arising from oversight or omission by the court, rather than through clerical mistake, is not within the purview of the rule."). Rule 36 is normally used to correct a written judgment of sentence to conform to the oral sentence pronounced by the judge. 26 Moore et al., supra, ¶ 636.03[1][c].

See United States v. Fraley, 988 F.2d 4, 5-6 (4th Cir. 1993) ("There is no evidence whatsoever that the district court, at the sentencing hearing, intended to impose anything but a sentence of ten months of imprisonment. There is no clerical error.").

To be sure, both Mackay and Vanderhorst stand for the proposition that a clerical error in a PSR may be corrected under Rule 36. But the error identified in the PSR in each of those cases was actual clerical error. In Mackay, the defendant pled guilty to conspiracy to distribute and possess with the intent to distribute marijuana. While Mackay pled guilty to a marijuana charge, the face sheet of his PSR identified the offense of conviction as involving cocaine—not marijuana. The Fifth Circuit stated that "[h]ere it is undisputed the mistake is a clerical error and therefore, remand for correction of the PSR is warranted." 757 F. 3d at 199. In Vanderhorst, the Fourth Circuit found a PSR to contain a clerical error when it picked up a mistaken characterization of a prior drug conviction in a state court's electronic database. The Vanderhorst court noted:

> The error in the PSR was attributable to an improper description of the offense in the Wake County, North Carolina Superior Court's electronic database, which the probation officer accessed and relied on in preparing the PSR. It is undisputed that given the nature of the error, Defendant's trial counsel would have had to

5

> travel to the Wake County Superior Court Clerk's office and examine the case file to learn of and correct the error. After learning of the error, the Wake County Superior Court corrected the database to reflect Defendant's correct offense of conviction.

927 F.3d at 826. The Fourth Circuit stated that "there is no dispute that the recording error at issue here constitutes a 'clerical' error for purposes of Rule 36." Id. (citing Mackay, 757 F.3d at 197, and United States v. Powell, 266 Fed. App'x 263 (4th Cir. 2008)). The clerical error at issue in Powell was similar. Powell was sentenced as a career offender based on an erroneous docket entry in a 1989 state court conviction. The Powell court applied Rule 36 to correct the clerical error and ordered resentencing, explaining as follows:

> Powell's sentence in federal court, imposed on the basis of the state court clerk's recording error, was over 10 years longer than it otherwise would have been. While the clerical error was not made by employees of the federal court, it nonetheless became part of the federal court's record for purposes of sentencing in this case. As the state court has now corrected the clerical error, we too will order a correction of the same error in the federal court record.

266 Fed. App'x at 266.

Here, in contrast, the claimed error is not properly characterized as clerical error. "[A] clerical error must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." United States v. Burd, 86 F3d 285, 288 (2d Cir. 1996). In United States v. Llanos, 59 Fed. App'x 412, 414 (2d Cir. 2003), the Second Circuit agreed with the district court that a request to change defendant's citizenship status in his PSR did not fall within the narrow confines of Rule 36, noting that defendant's "claim involves more than the 'mechanical' correction of a clerical error."

6

The error that Dominque Jones identifies concerns the probation officer's calculation of the amount of crack cocaine purchased by Brandon Snead. As regards Brandon Snead's purchase of crack cocaine from Oshay Jones, the June 26, 2014, Presentence Investigation Report ("PSR") stated as follows:

> Brandon Snead testified that he worked as a pimp and ran an escort service when he met Oshay Jones. He reported he provided Oshay Jones with escort services in exchange for crack cocaine. Snead said he also purchased crack cocaine from Oshay Jones, and estimated he bought one ounce per week for eight months at a rate of $2,000 per ounce. He indicated that Oshay Jones was his main source of supply of crack cocaine.

Dominique Jones PSR, ECF No. 345, at ¶ 42.

Although the specific issue of the amount of crack cocaine purchased by Brandon Snead from Oshay was not addressed at sentencing, the drug weight supporting the base offense level of 34 assigned to Dominique and Oshay in their PSRs was addressed. See Sent'g Hr'g Tr., ECF No. 406 at 18-26. As to drug weight, the court concluded as follows at the sentencing hearing:

> All right. In terms of the question of quantity as to Dominique, Kearrah, and Oshay, the Court overrules the objections to the presentence report.
>
> The Court has reviewed the presentence report carefully, listened to the evidence carefully. There is ample evidence to show that as of November 9th, 2007, each of these individuals was involved in this conspiracy, which, of course, continued until May of 2013; that as of—throughout the conspiracy, there was 1.4 kilograms of crack cocaine seized.
>
> It is the Court's view from listening to all the evidence that each one of these three defendant was—it was reasonably foreseeable to each of these defendants that this—the size and scope of this conspiracy, including Kearrah, essentially for the reasons stated in the presentence report.

> And that 1.4 kilograms of crack cocaine that was seized during the course of this conspiracy, that was just seized alone, is really a conservative—is really a conservative estimate of the amount of crack cocaine involved, and it establishes a base offense level of 34.
>
> And for that reason, questions about double-counting and all the other things that might otherwise come into play and that the Court would make additional specific findings about, it's really unnecessary for me to go there, because it's clear that each of these three defendants was intricately involved with the details of this conspiracy since at least November 7, 2007, based on all the evidence, direct and circumstantial.
>
> And the Court therefore attributes the amounts that—I don't have to determine how many kilos were involved, but I easily conclude that it was greater than 840 grams, which establishes a base offense level of 34.

Id. at 25-26.

In the PSR prepared for Oshay Jones's 2020 resentencing, the probation officer provided a more fulsome explication of Brandon Snead's trial testimony as follows:

> Brandon Snead testified that he first met Oshay Jones in January 2012, and at the time Snead was running an escort service on Backpage. Oshay responded to one of his ads. Approximately the next week or so, Snead contacted Oshay to purchase crack cocaine. Snead knew Oshay had crack cocaine because Oshay had paid the escort in crack cocaine. Snead testified that between January 2012 and August 2012 (when he was incarcerated) he contacted Oshay on average two or three times per week and would purchase anywhere from a $60 amount up to a $350 amount of crack cocaine. Snead expressed when he would buy narcotics from Oshay, he would very seldomly see anyone else in the vehicle with Oshay; however, on occasion, he did text or call Oshay and someone else would show up. Snead indicated that he only ever bought crack cocaine from Oshay. Snead gave a proffer interview with authorities on November 28, 2012. Snead testified that in his proffer he stated, "He bought crack cocaine from Oshay Jones. Jones was one of his main suppliers. He bought at least one ounce a week for the last four months." Snead clarified

>his testimony that the "last four months" was actually the four months prior to his incarceration in August 2012. He testified that he paid $2,000 (cumulatively) for an ounce of crack cocaine, and expressed the small buys added up to that much. Snead reiterated that the smallest quantity he bought was $60 and he bought quantities all the way up to $350. Snead testified that during his proffer he advised he was spending between $300 and $500 per day, through cumulative purchases. During cross-examination, when asked "So when you told investigators that 'For the last four months I bought an ounce a week' you may have overstated what you were buying?" Snead responded, "Yes, sir." When he was asked, "And when you told them you bought $300 to $500 a day, you might have overstated what you were buying?" Snead responded, "Yes, Sir."

Oshay Jones Revised PSR, ECF 723, at ¶ 50. In the drug weight summary, the probation officer determined that the most conservative estimate of the Brandon Snead drug weight was one ounce (28.35 grams), and the court used this amount when calculating the base offense level at Oshay Jones's resentencing.[6]

Plainly, the error claimed by Dominique is not clerical error under Rule 36. Rather, the error he posits lies in the probation officer's understanding and characterization of Brandon Snead's testimony. To be sure, the difference in drug weight is significant as the original PSR referenced Brandon Snead buying an ounce of crack cocaine a week for eight months, as opposed to a cumulative total of one ounce reflected in the revised PSR used for Oshay Jones's resentencing. But while the dimension of that error is not insubstantial, it cannot fairly be characterized as clerical.

---

[6] At resentencing, the court calculated the drug weight used to determine Oshay Jones's base offense level on the specific amounts of drugs testified to at trial. Oshay Jones Resentencing Hr'g Tr., ECF No. 754 at 73-76. At resentencing, Oshay Jones's base offense level dropped from the originally calculated level 34 to a level 30.

Rather, the error is substantive, which if clear may be corrected under Rule 35(a), but is subject to the 14-day limit contained in that rule. As the Seventh Circuit noted in <u>United States v. Becker</u>, 36 F.3d 708, 710 n.2 (7th Cir. 1994), "[i]f a defendant is in fact arguing that his problem lies in the translation from the district court's original sentence to the formal written commitment order, then Rule 36 applied; but if the defendant is raising a problem that is substantive in nature, even if it is mechanical or computatational—then Rule 35 governs." The <u>Becker</u> court noted that the time limits in Rule 35 "would as a practical matter become meaningless if we were willing to turn every technical problem into a "clerical" one within the scope of Rule 36." <u>Id.</u>

Accordingly, Dominique Jones's motion to correct his judgment for clerical error, ECF No. 781, is **DENIED**.

### III.

In ECF No. 779, Dominique Jones asks the court to reconsider its prior ruling denying relief under Amendment 782 and to appoint counsel for the "limited purposes of representing me in a 782 motion proceeding in this court." Motion, ECF No. 779. The court has previously ruled that there is no basis for a sentence reduction under 18 U.S.C. § 3582(c)(2) based on USSG Amendment 782. Order, ECF No. 773. As explained in that Order, the court ruled:

> Defendant is ineligible for a reduction pursuant to Amendment 782 because its two level reduction in the offense level would not reduce his guideline range. While Amendment 782 reduces the total offense level from a 41 to a 39, the low end of the guideline range for criminal history category V at both levels 39 and 41 is 360 months. Because Amendment 782 does not reduce defendant's guidelines sentencing range, he is ineligible for a sentence reduction.

Id. Further, because the court in 2014 varied downwards to a sentence of 280 months, a term that is less than the minimum of the amended guideline range under Amendment 782, Dominique is not eligible for a further sentence reduction. See USSG §1B1.10(b)(2)(A) ("Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.").

As such, Dominique Jones's motion to reconsider and appoint counsel on the Amendment 782 issue, ECF No. 779, is **DENIED**.

### IV.

As the court has now addressed both of Dominique Jones's pending motions, his motion for a ruling, ECF No. 786, is **DENIED as moot**.

The Clerk of Court is directed to docket this memorandum opinion and mail a copy to defendant Dominique Jones.

Entered: August 3, 2022

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2022.08.03 15:00:20 -04'00'

Michael F. Urbanski
Chief United States District Judge