CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
April 01, 2026
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:13-cr-00038 |
| v. | ) | |
| | ) | |
| DOMINIQUE MAURICE JONES, | ) | By:  Michael F. Urbanski |
| Defendant | ) | Senior United States District Judge |

## MEMORANDUM OPINION

Dominique Maurice Jones, represented by counsel, has filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as a motion for compassionate release. ECF No. 826. The government responded and Dominique has replied. ECF Nos. 828, 833.[1] As discussed more fully below, the court **GRANTS in part** Dominique's motion for a sentence reduction and reduces his sentence from 280 months to 250 months, to be followed by a 6-year term of supervised release.

### I. BACKGROUND

This case presents a unique set of circumstances where two brothers, Dominique and Oshay Jones, were convicted on the same day for the same offense and sentenced to the same 280-month term of imprisonment. After multiple post-conviction motions filed by both and a grant of clemency by former President Biden for Oshay, Oshay was released from custody on April 17, 2025, after serving not quite twelve years in prison. Dominique, the petitioner herein, remains incarcerated and has a projected release date of December 15, 2034.

---

[1] Dominque Maurice Jones is the petitioner in this action. Because assessment of his claims necessarily involves references to his brother and codefendant Oshay Terrell Jones, the court refers to the brothers by their first names.

As set forth below, the court finds that Dominique's case involves a combination of extraordinary and compelling reasons that warrant a sentence reduction. The first is the sheer disparity in the sentences that Dominique and Oshay are serving for the same offense. Equally extraordinary and compelling is the fact that a substantial mistake was made in the Pre-sentence Investigation Report ("PSR") prepared by the United States Probation Office that was used to sentence both men. The error went undetected by Dominique and Oshay's counsel, the prosecutor, the probation officer and the court at the time of sentencing, resulting in a significantly higher total offense level for both, which in turn resulted in a higher guidelines sentencing range for both. Oshay was able to address the mistake via post-conviction motions, while Dominique was unable to do so because of the procedural posture of his case at the time he learned of the error.

As the Fourth Circuit Court of Appeals has reiterated, "'[t]he very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction.'" United States v. Davis, 99 F.4th 647, 657, 2024 WL 1662931 (4th Cir. 2024) (quoting United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020) (cleaned up)). The circumstances in this case justify a sentence reduction, albeit one limited by the 18 U.S.C. § 3553(a) factors.

### A. Convictions and Sentences

On January 28, 2014, a jury found Dominique guilty of one count of conspiring to distribute and possess with intent to distribute 28 grams or more of crack cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Superseding Indictment, ECF No. 159; Jury Verdict,

2

ECF No. 273. The conspiracy involved siblings Dominique, Oshay, and Kearrah Jones, as well as Quanesha Jones, who is the mother of two of Dominique's children, and two other associates. Dominique's PSR, ECF No. 345 ¶ 7. The conspiracy began sometime between 2005 and 2010 and continued until May 2013. Id. ¶ 6. According to the PSR, Oshay was the leader of the conspiracy and Dominique "conducted managerial duties." Id. ¶ 7.

For purposes of the United States Sentencing Guidelines ("USSG" or "guidelines"), Dominique was held responsible for 1,442 grams of crack cocaine. Sent. Tr., ECF No. 406 at 25; Dominique's PSR, ECF No. 345 ¶¶ 46–47. His statutory sentencing range was 5 to 40 years. Id. ¶ 112. Based on drug weight, Dominique had a base offense level of 34, increased by 2 points for possessing a firearm, 2 points for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood, and 3 points for his role as a manager in the offense, for a total of 41 points. Id. ¶¶ 52–61. He had 12 criminal history points, giving him a criminal history category of V. Id. ¶¶ 87–89. The combination of his total offense level of 41 and criminal history category of V gave him a guidelines sentencing range of 360 months to life, but because the statutory maximum sentence was 40 years, his guidelines range was 360 months to 480 months. Id. ¶¶ 112–13. On June 23, 2014, Dominique was sentenced to a term of 280 months to be followed by a 6-year term of supervised release. Dominique's Judgment., ECF No. 325.[2]

Oshay also had a base offense level of 34 based on the same drug weight, 1,442 grams of crack cocaine, increased by 2 levels for possessing a dangerous weapon, 2 more levels for

---

[2] The Hon. Samuel G. Wilson presided over the trial and sentencing in this case. Upon his retirement, the case was transferred to the undersigned.

committing the offense as part of a pattern of criminal conduct engaged in as a livelihood, and by 4 levels for being an organizer or leader of the criminal activity, for a total offense level of 42. Oshay's Original PSR, ECF No. 341 ¶¶ 61–60. Oshay had a criminal history category of I, which in combination with his base offense level of 42, gave him a guidelines sentencing range of 360 months to life, capped at 480 months because of the statutory maximum sentence. Id. ¶¶ 76, 107–08. The court sentenced Oshay to the same 280-month term to which it sentenced Dominique. Oshay's Judgment, ECF No. 335.

### B. Post-Conviction Litigation

Both defendants engaged in significant post-conviction litigation, with Oshay's efforts resulting in a reduction of his sentence to 168 months, and with Dominique's efforts resulting in no reduction to his sentence. In addition, Oshay received an executive grant of clemency and was released from prison on April 17, 2025. Their post-conviction filings were intertwined and a summary of their various arguments and results will be helpful in the discussion of Dominique's current motion.

### (1) Oshay

After his conviction, Oshay filed an appeal which the Fourth Circuit denied in a per curiam opinion on August 14, 2015. ECF Nos. 425, 426. Next, proceeding pro se, Oshay filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. ECF No. 448. In Claim 1 of his habeas petition he expressly asserted ineffective assistance of counsel as regarded the PSR's calculation of drug weight, both as to the amount seized during the conspiracy and also on a claim that his attorney should have objected to the drug weight calculated in the PSR based

on the amount of cocaine that a man named Brandon Snead purchased from Oshay.[3] Id. at 17-18. Oshay filed several amendments to his § 2255 petition and later sought leave to amend his petition to add a claim that but for bad legal advice from his counsel, he would have accepted a favorable plea offer.[4] Mot. to Amend, ECF No. 464. On June 13, 2016, the court granted Oshay's motion to amend his petition to add the Plea Offer Claim as Claim 7. ECF No. 468.

The government filed a motion to dismiss the § 2255 petition, arguing in part that the purported plea agreement had never existed. Oshay filed a response, focusing on issues concerning the drug weight attributable to him and guidelines enhancements for use of a firearm and his role in the conspiracy. His only reference to the Plea Offer Claim was a statement that "Petitioner moves this court to strike claims 6 and 7 from the record." Pet.'s Resp., ECF No. 491 at 1.

Without holding an evidentiary hearing, the court granted the government's motion to dismiss. Mem. Op., ECF No. 520. The court addressed each of Oshay' claims, making no mention of the one line from Oshay's August 11, 2016, response in which he moved to "strike claims 6 and 7 from the record." In addressing the merits of Claim 7 (the Plea Offer Claim), the court found no prejudice resulting from counsel's faulty advice, concluding that there was no evidence that a favorable plea agreement had ever existed. The government had offered evidence of a draft plea agreement that would have given Oshay a guidelines range of 235–

---

[3] This claim is referred to as the Snead Drug Weight Claim. The crux of the claim is that the United States Probation Officer misunderstood Snead's testimony and relied on her misunderstanding to find that Oshay was responsible for distributing more crack cocaine that was supported by Snead's testimony. Oshay argued that his counsel was ineffective for not objecting to the finding by the probation officer.

[4] This claim is referred to as the Plea Offer Claim.

293 months, and he ultimately was sentenced in that range. Therefore, the court concluded that he had shown neither that he had been offered a more favorable plea agreement nor that he was prejudiced under Strickland v. Washington, 466 U.S. 668, 687 (1984). Mem. Op., ECF No. 520 at 6.

On the issue of drug weight, the court's opinion did not address Oshay's claim that trial counsel was ineffective for not challenging the United States Probation Officer's finding in paragraph 41 of the PSR that Snead "bought one ounce per week for eight months at a rate of $2,000 per ounce," and in paragraph 45 of the PSR that "a total of 1.4 kilograms of crack cocaine was seized during the offense." Pet.'s Resp., ECF No. 491 at 14–15. Instead, the court focused on trial counsel's generalized objections to the drug weight attributable to Oshay based on the jury's finding that the conspiracy did not involve more than 280 grams of crack cocaine. In other words, by characterizing Oshay Jones' claim as a generalized failure to object to drug weight, as opposed to the specific findings in paragraphs 41 and 45 of the PSR, the court did not address the Snead Drug Weight Claim. See Mem. Op., ECF No. 520 at 7–9.

On February 21, 2017, Oshay filed a motion under Federal Rule of Civil Procedure 59(e), asserting that the court misunderstood and misconstrued his argument. Mot., ECF No. 525, at 3. Oshay's Rule 59(e) motion focused exclusively on his claim that the court incorrectly calculated the drug weight in this case and did not mention the Plea Offer Claim. The court construed the motion as a successive § 2255 motion and dismissed it without prejudice on March 10, 2017. Mem. Op. and Order, ECF Nos. 532, 534. Oshay appealed and on November 28, 2017, the Fourth Circuit granted a certificate of appealability and ordered briefing on the court's failure to hold an evidentiary hearing on the Plea Offer Claim. Order, ECF No. 548.

6

In the meantime, Oshay's trial counsel, David Walker, filed on December 20, 2017, an affidavit, exclusively addressing the Plea Offer Claim.[5] In that affidavit, Walker stated as follows:

> It is my memory that [Oshay] was offered the same plea deal that Dominique Jones was offered; that he had to testify against the rest of the co-conspirators and they would agree to a fixed term of 10 (ten) years (120 months) pursuant to 11(c)(1)(C) of the Federal Rules of Criminal Procedure. I explained to [Oshay] that if for any reason the Judge did not accept the Plea Agreement then he would be able to withdraw his plea and go to trial.
>
> I also discussed with him a letter from [Dominique's attorney] Melissa Friedman to Dominique where she also suggested that he take the Plea Agreement and my memory is that he already had a copy of that letter. I remember being surprised that he had a copy of that letter so quickly. [6]

Second Walker Aff., ECF No. 551, at 2.

At the Fourth Circuit, the government took the position that Oshay Jones had abandoned Claim 7 (the Plea Offer Claim) on which the Fourth Circuit had granted a certificate of appealability. Pet.'s Resp., ECF No. 491, at 1. Gov't's Informal Resp. Br., ECF No. 19, at 4-6, United States v. Oshay Jones, No. 17-6484 (4th Cir. Jan. 26, 2018). Oshay responded that he "did not abandon his claim and never intended to do so," claiming instead that "[w]hen petitioner attempted to Strike Claim 6 and 7 from the record he was referring to the government's arguments." Oshay's Informal Reply Br., ECF No. 20, at 2, United States v. Oshay Jones, No. 17-6484 (4th Cir. Feb. 13, 2018).

---

[5] Earlier, on April 27, 2016, Oshay's trial counsel had filed an affidavit that addressed his claim about drug weight but did not address Oshay's claim regarding the offer of a plea agreement. The affidavit discussed the Snead Drug Weight Claim obliquely, in that the attorney said that the PSR led to an improper calculation of the guidelines range but did not mention Snead's testimony. ECF No. 460.

[6] Oshay and Dominique were being held in the same jail pending trial.

7

In a per curiam opinion entered on March 12, 2018, the Fourth Circuit accepted the government's abandonment argument and affirmed the dismissal of the Plea Offer Claim, finding that Oshay had requested that the district court strike the claim, and thereafter failed to present any further argument on the claim in the district court. Mem. Op., ECF No. 554, at 2. Thus, although the Fourth Circuit had issued the certificate of appealability on the Plea Offer Claim, it never reached the merits of the claim as it found that Oshay had abandoned it.

In the meantime, Dominique had filed a § 2255 motion, claiming, as did Oshay, that he had received ineffective assistance of counsel when his attorney assured him that if the prosecution could not prove that he was responsible for trafficking 280 grams of crack cocaine, that he would be acquitted. This advice was erroneous, and Dominique claimed that he relied on it to reject a favorable 10-year plea offer. ECF No. 481. The government asserted, as it had in response to Oshay's motion, that such a generous plea offer had never been made. Mot. to Dismiss Dominique's § 2255 Motion, ECF No. 508, at 4.

At an evidentiary hearing held on Dominique's motion on May 4, 2018, it came to light that although a written plea agreement was tendered to Dominique, had he accepted it, he would have been sentenced to more jail time than he actually received. However, it also came to light that the government had made an oral offer to Dominique's counsel for Dominique to plead guilty in exchange for a 10-year sentence. Dominique's attorney presented him with the offer, but Dominique refused it. Evidentiary Hr'g Tr., ECF No. 570 at 5–8; Letter, ECF No. 518-1. On June 7, 2018, the court dismissed Dominique's petition, finding that his counsel had adequately explained the terms of the plea agreement to him as well as the charges against him and what the government would have to prove at trial, and had recommended that he

8

take the plea deal. In addition, at trial, his attorney had objected to the verdict form the court provided to the jury, which allowed the jury to find Dominique guilty of a lesser-included offense of conspiring to distribute 28 grams of crack. Mem. Op., ECF No. 576 at 10–20.

Shortly after the evidentiary hearing was held on Dominique's § 2255 motion, where evidence surfaced that Dominique was offered a 10-year plea deal, the Fourth Circuit issued the mandate on its denial of Oshay's appeal of his § 2255 motion. On May 21, 2018, Oshay filed a Rule 60(b)(6) motion seeking relief from the January 18, 2017, dismissal of his habeas petition, citing extraordinary circumstances. Mot., ECF No. 571. He filed a supplemental Rule 60(b) motion on July 26, 2018. Mot., ECF No. 581. Given the revelation of the plea offer made to Dominique, the court appointed counsel to represent Oshay, noting that the court would address only the Plea Offer Claim, as the other issues had been thoroughly considered by this court and the Fourth Circuit. Ord., ECF No. 594. An evidentiary hearing was held on Oshay's Rule 60(b) motion on May 23, 2019, and the court ordered supplemental briefing, all of which focused on the Plea Offer Claim.

On July 15, 2019, Oshay sought leave of court to brief the Snead Drug Weight Issue, arguing that while the court had addressed other issues pertaining to drug weight, it had never addressed the issue of whether Oshay's trial counsel was ineffective for not objecting to the probation officer's miscalculation of the weight of drugs sold to Snead, as set forth in paragraph 41 of the PSR. Mot., ECF No. 658. That paragraph stated the following:

> Brandon Snead testified that he worked as a pimp and ran an escort service when he met Oshay Jones. He reported he provided Oshay Jones with escort services in exchange for crack cocaine. Snead said he also purchased crack cocaine from Oshay Jones, and estimated he bought one ounce per week for eight

9

> months at a rate of $2,000 per ounce. He indicated Oshay Jones was his main source of supply of crack cocaine.

Oshay's PSR, ECF No. 341 ¶ 41. Later in the PSR, the probation officer stated:

> Based on the amount of crack cocaine seized from controlled buys, searches, and arrests, as well as the amount trial witnesses testified to buying or seeing (approximately 1,442.2 grams) a total of 1.4 kilograms of crack cocaine was seized during the offense. According to expert testimony at trial, a gram of crack cocaine sells, at the low-end, for $100; therefore, the amount of cash seized ($23,310) during the offense would convert to 233.1 grams of crack cocaine. Furthermore, the amount of powder cocaine observed by witnesses was approximately 2,010 grams.

Id. ¶ 45.

Oshay argued that the description of Snead's testimony was incorrect. Although Snead testified that he bought crack cocaine from Oshay two or three times per week for eight months, his testimony was that the total of his cumulative purchases from Oshay was $2,000, or one ounce total. Trial Tr., ECF No. 400 at 7, 16. The court granted the motion to consider the Snead Drug Weight Claim. ECF No. 663.

In its Memorandum Opinion, issued on April 9, 2020, the court found that it could not address the merits of the Plea Offer Claim, because Oshay's Rule 60(b)(3) motion was untimely filed and he could not show that he was entitled to equitable tolling. Mem. Op., ECF No. 684 at 22–29. However, the court found that it could address the Snead Drug Weight Claim on the merits because Oshay had raised it on habeas but the court had never addressed it. Id. at 29–34.

Next, the court determined that Oshay had made out an ineffective assistance of counsel claim based on the difference in Snead's testimony at trial and the characterization of his testimony in the PSR:

10

At trial, Snead testified that he met Oshay Jones in January 2012, and began buying crack cocaine from him. Snead principally communicated with Oshay Jones by text, and testified that on average, between January and August of 2012 he bought crack cocaine from Oshay Jones two to three times a week, in amounts from $60 to $350. Trial Tr., ECF No. 400, at 7-8. Snead testified that he made small purchases that cumulatively totaled an ounce of crack, spending $2,000. Id. at 16. In stark contrast to this testimony, paragraph 41 of the PSR stated that Snead "estimated he bought one ounce per week for eight months at a rate of $2,000 per ounce." PSR, ECF No. 341, ¶ 41. In drug quantity terms, there is a substantial difference between Snead's testimony that he bought a total of one ounce from Oshay Jones, and the PSR's recitation that Snead bought an ounce of crack cocaine from Oshay Jones every week during the January to August 2012 period. This gross overstatement of drug quantity, not objected to by trial counsel, appears to have factored into the total quantity of 1,442.2 grams of crack cocaine calculated in paragraph 45 of the PSR, from which the Base Offense Level was calculated in paragraph 51. As such, the Snead Drug Weight Claim is meritorious. To be sure, the transcript of the Snead testimony was not filed until September 4, 2014, after Oshay Jones was sentenced. Regardless, the court finds that trial counsel's failure to object to the overstatement of the quantity of crack cocaine purchased by Snead was constitutionally ineffective and prejudiced Oshay Jones by inflating the Base Offense Level used for sentencing.

Id. at 34–35.

A new PSR was prepared and on December 21, 2020, the court held a plenary resentencing hearing. The revised PSR in Oshay's case calculated his base offense level at 34, based on 10,000 to 30,000 kilograms of converted drug weight, with 2 additional points for possession of a dangerous weapon, 2 points for committing the offense as part of a criminal livelihood, and 4 points for his role as a leader, giving him a total offense level of 42 points. Oshay's Revised PSR, ECF No. 723 ¶¶ 62–71. Although the calculation in the final PSR reduced the drug weight attributed to Snead's purchases of drugs from Oshay, it added

11

additional drug weight based on other purported drug activities. Oshay objected to some of the calculations in the final PSR, and the court sustained some of the objections and overruled others. Sent. Hr'g Tr., ECF No. 752 at 64–80; ECF No. 74.

After ruling on the objections, the court calculated the amount of drug weight for which Oshay was held responsible at 394.9 grams, giving him a base offense level of 30. Sent. Hr'g Tr., ECF No. 754 at 75–76. The court added 2 points for possession of a dangerous weapon, and 4 points for Oshay's role in the offense, but assigned no points based on criminal livelihood, giving Oshay a total offense level of 36. Id. at 76–77. The court next found that Oshay was in criminal history category II, rather than I as originally assessed, with the combination of total offense level and criminal history category giving him a guidelines range of 210–262 months. Id. at 79. The court reduced the low end of the guidelines range by roughly 20 percent to reflect the sentencing court's reduction based on Oshay's difficult upbringing and circumstances, to arrive at a term of 168 months. Id. at 141; Am. J., ECF No. 748. The Fourth Circuit affirmed the conviction and sentence on January 19, 2023. ECF No. 794.

On January 21, 2025, former President Biden issued an executive grant of clemency, commuting Oshay's sentence and directing that his sentence expire on April 17, 2025. ECF No. 822. Oshay was released from federal custody on that day, after having served 142 months and 18 days of his sentence.

### (2) Dominique

Following his conviction, Dominique filed a direct appeal, and the Fourth Circuit affirmed in a per curiam opinion on August 4, 2015. United States v. Jones, 622 F. App'x 204

12

(Aug. 4, 2015). On July 21, 2016, Dominique filed a § 2255 motion to vacate. ECF No. 481. After Dominique filed two motions to supplement his original motion and the government filed two motions to dismiss, the court appointed counsel to represent Dominique and set the case for an evidentiary hearing. ECF Nos. 545, 547, 548. On April 18, 2018, counsel for Dominique filed a comprehensive amended motion for relief under § 2255. ECF No. 564. Counsel determined not to pursue claims of ineffective assistance of counsel that were litigated in Oshay's § 2255 motion and found to lack merit.[7] Dominique's Comprehensive Mot., ECF No. 564 at 3–10. Instead, counsel argued that Dominque's trial attorney had been ineffective in several other ways.

On June 7, 2018, the court dismissed Dominique's motion for relief under § 2255, finding that his attorney had provided effective assistance. ECF Nos. 576, 577. Although there was some discussion of drug weight in the pleadings, there was no discussion of the Snead Drug Weight Claim. Dominique appealed, but on September 27, 2018, his appeal was dismissed for failure to prosecute ECF Nos. 579, 588, 589.[8]

On March 24, 2021, Dominique, proceeding pro se, filed a motion for reconsideration or, alternatively, a motion to reopen his § 2255 motion, along with a motion for appointment of counsel. ECF Nos. 767, 768. In the motion, he raised the Snead Drug Weight Claim for the first time. Dominique claimed that although he did not learn the exact parameters of the Snead Drug Weight Claim until after the court granted Oshay's motion on the claim, that the

---

[7] This decision was made prior to the court finding that Oshay has received ineffective assistance of counsel based on the Snead Drug Weight Claim, which did not occur until April 2020.

[8] Appeal counsel filed a motion to withdraw after filing the notice of appeal and the court granted the motion. ECF Nos. 580, 583.

court had enough information in front of it to have construed his other arguments about drug weight as incorporating the Snead Drug Weight Claim. Mot., ECF No. 767 at 19–36, 43–46.[9]

The court denied Dominique's motion on June 21, 2021. ECF Nos. 771, 772. Relevant to the Snead Drug Weight Claim, the court found that Oshay raised the claim in his initial § 2255 motion, but the court had failed to rule upon it, which provided an opportunity for the court to revisit the issue when Oshay filed his Rule 60(b) motion for relief. However, Dominique had not raised the claim in his initial § 2255 motion. Although Dominique had made arguments related to drug quantities, he did not explicitly refer to Snead at any point and did not direct the court to the alleged error. Mem. Op., ECF No. 771 at 4–7. The court concluded that Dominique's Snead Drug Weight Claim was a new claim and that he had raised it in a second or successive § 2255 motion for which he had not obtained authorization from the Fourth Circuit to file. Id. at 7. Nor was he entitled to relief under Rule 60(b), because he had not shown either that error occurred in his prior § 2255 motion, or that there were extraordinary circumstances that caused the court to fail to consider the Snead Drug Weight Claim in his first § 2255 motion. Id.

Dominique subsequently sought permission from the Fourth Circuit to file a successive § 2255 motion but his request was denied. ECF No. 777. Dominique next filed a motion for reconsideration and a motion to appoint counsel. ECF No. 779, which the court denied on August 4, 2022. ECF Nos. 792, 793. Dominque also sought to have his PSR amended pursuant to Rule 36 of the Federal Rules of Criminal Procedure to show that he should not have been held liable for the drug weight set forth in his PSR. ECF No. 781. The court denied the motion,

---

[9] Dominique made other claims that are not relevant here.

14

finding that the recited drug weight was not a clerical error, but rather a substantive error that was not subject to correction via Rule 36. ECF Nos. 792 at 3–10, 793.

Dominique has been incarcerated since May 15, 2013. He currently is housed at United States Penitentiary Pollock and has a projected release date of December 15, 2034.[10] In 2025 he retained counsel and filed the pending motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

Dominique argues that relief is appropriate because he was incorrectly sentenced due to an erroneous calculation of drug weight, because a large disparity exists between his sentence and that of Oshay, and because he has been rehabilitated. Mot., ECF No. 826 at 14–15. The government counters that Dominique is attempting to repackage a failed habeas claim as an extraordinary and compelling reason for a sentence reduction, that his institutional record shows a lack of rehabilitation, and that the 18 U.S.C. § 3553(a) factors weigh against a sentence reduction.

## II. ANALYSIS

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or

---

[10] https://www.bop.gov/inmateloc/ (search term "Dominique Maurice Jones") (last viewed February 18, 2026).

> supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Dominique's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

### A. Exhaustion

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131.

Dominique, via counsel, submitted a compassionate release request to the warden at his facility on November 13, 2024, and filed his motion for compassionate release more than thirty days later. ECF No. 826-1. The government does not dispute that Dominique has satisfied this threshold requirement. Resp. to Def.'s Mot. for Compassionate Release, ECF No. 828, 3, n.1. Therefore, the court finds that Dominique has fully satisfied the statute's administrative exhaustion requirement.

16

## B. Extraordinary and Compelling Reason

The court next must consider whether it should reduce the term of imprisonment. Effective November 1, 2023, the United States Sentencing Commission amended the policy statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023). The revised policy statement will be applied to Dominique's motion.

The policy statement in the revised guidelines now provides in USSG § 1B1.13(b) that an "extraordinary and compelling" reason warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons; and (6) unusually long sentence. Dominique seeks relief under USSG § 1B1.13(b)(5), the catch-all provision, which provides that an extraordinary and compelling reason for a sentence reduction exists when the defendant presents any circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons provided in paragraphs (1) thru (4) are similar in gravity to those described in paragraphs (1) thru (4).

As both parties recognize, Dominique cannot relitigate his § 2255 motion in this motion for a sentence reduction. The Fourth Circuit held in United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022), that "28 U.S.C. § 2255 is '[t]he exclusive remedy' for challenging a federal conviction or sentence after the conclusion of the period for direct appeal, 'unless [§ 2255] is inadequate or ineffective,' in which case the defendant may file a 28 U.S.C. § 2241

17

petition for habeas corpus pursuant to the savings clause at § 2255(e)." Id. The fact that a movant may be procedurally barred from raising his arguments in a § 2255 petition does not qualify as an extraordinary and compelling reason for s sentence reduction. Id. at 271.

Here, Dominique's § 2255 motion asserting that his attorney provided ineffective assistance of counsel for not litigating the Snead Drug Weight Claim at sentencing was dismissed without prejudice as second or successive and the Fourth Circuit denied his motion for permission to file a second or successive petition. Accordingly, that claim cannot be brought in this motion for a sentence reduction as a stand-alone argument that his attorney provided ineffective assistance of counsel. "[It] may, however, be considered as part of the court's exercise of its discretion concerning whether another legitimate basis exists." United States v. Whitted, No. 5:15-CR-00372-M-1, 2025 WL 1944018, at *5 (E.D.N.C. July 15, 2025) (citing United States v. Johnson, 143 F.4th 212, 215 (4th Cir. 2025) and McCoy, 981 F.3d at 280).

### (1) Sentencing Disparity

Dominique argues that an unwarranted sentencing disparity exists between him and Oshay, as well as between him and the other defendants in the conspiracy, and that the court can address the disparity via USSG § 1B1.13(b)(5). The Fourth Circuit held in Johnson that the catch-all provision at USSG § 1B1.13(b)(5) gives a district court discretion to reduce a sentence on the basis that a defendant's sentence was significantly longer than that of his codefendants convicted of similar offenses.

> In determining whether an extraordinary and compelling reason exists to grant a defendant compassionate release, and in addition to the various circumstances outlined in § 1B1.13(b), § 1B1.13(b) allows a district court to contemplate "other reasons" that may

18

> constitute "extraordinary and compelling." § 1B1.13(b)(5). A district court may consider this reason by itself or in combination with any other reasons outlined in § 1B1.13(b), so long as they "are similar in gravity[.]" § 1B1.13(b)(5). In other words, there is no exhaustive list as to what may be considered extraordinary and compelling, and it was well within the district court's discretion to find "other reasons," such as Johnson's sentencing disparity, constituted an extraordinary and compelling factor that weighed in favor of granting relief.

Id. at 216.

Dominique argues that while he and Oshay received the same sentence initially, the fact that Oshay's sentence was reduced and later commuted has created an unwarranted sentencing disparity. As set forth above, at their original sentencing on June 25, 2014, Oshay and Dominique were both sentenced to 280 months. Nevertheless, Oshay was released from custody on April 17, 2025, after having been incarcerated for a little more than 142 months, and Dominique remains incarcerated with more than 105 months, or 8 years of his sentence left to serve. The disparity, which came to exist years after Oshay and Dominique were sentenced, is unwarranted given their underlying behavior and the sentencing court's assessment of their culpability at the time of sentencing.

In United States v. Wesley, No. 1:97-cr-382-2, 2025 WL 2623449, at *6 (E.D. Va. Sept. 11, 2025), the court granted compassionate release and reduced the defendant's sentence from life to 480 months, relying in part on the fact that a sentencing disparity was created when a codefendant's sentence was reduced from life to 360 months. Id. (citing Unted States v. Russell, 729 F.Supp.3d 584 (E.D. Va. 2024)). The reduction of the codefendant's life sentence "compelled the court to consider whether the reduction created a sentence disparity internal to the case that constitute[d] an extraordinary and compelling reason to reduce Wesley's

sentence as well." Id. The court distinguished the situation of a codefendant receiving a lesser sentence based on something he had done, such as pleading guilty or assisting the government, with the situation of a codefendant having been granted a sentence reduction via 18 U.S.C. § 3582(c)(1)(A). The court concluded that where "the First Step Act provided the vehicle for the sentence reduction [in the codefendant's case], it is only just for the Court to consider whether Defendant Wesley's Sentence should also be reduced, to avoid a disparate outcome." Id. at 7. See also United States v. Payton, No. PJM-06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (finding an extraordinary and compelling reason for a sentence reduction where a codefendant originally was sentenced to life but was released on post-conviction motions while movant remained incarcerated on a 292-month sentence).

The court finds that on the unique facts of this case, Dominique has shown an extraordinary and compelling reason for a sentence reduction based on the disparity between his and Oshay's sentences after Oshay's sentence was reduced and ultimately commuted. The difference in the current sentences is stark and warrants a reduction in Dominique's sentence.

### 2. Mistake in PSR at Sentencing

In addition to the foregoing, the court finds that another extraordinary and compelling reason exists to reduce Dominique's sentence—that his PSR contained a significant error and there is no other means by which the court can address it. In United States v. Lopez, 523 F.Supp.3d 432, 438 (S.D.N.Y 2021), the defendant filed a motion for compassionate release arguing that at the time he was sentenced, he was incorrectly designated as a career offender. He had not previously filed a direct appeal and the time for filing a §2255 motion had passed. Id. The government conceded that he had been incorrectly classified as a career offender and

20

that the gap between the correct guidelines range and the erroneous one was substantial. Id. The court noted that defense counsel and the prosecutor had missed the error and that the United States Probation Officer on its own review thought that the defendant qualified as a career offender. In addition, the court did not detect the error. Id.

The court noted the strong federal interest in the finality of judgments and that "most errors in an original sentencing are not likely to qualify as an extraordinary and compelling reason for a sentence reduction." Id. However, in Lopez's case, the court found that the guidelines error was one that the government or the court should have discovered at sentencing and determined that allowing the sentence to stand undermined respect for the judicial process. Id. Discovering the error required no investigation, fact-finding, or credibility assessment. Id. In addition, the guidelines error was substantial, increasing the guidelines range from 121–151 months to 262–327 months. Id. at 439. The court concluded that the significant error in Lopez's guidelines calculation, missed by all parties at the time of sentencing, undermined the justness of the sentence and warranted a sentence reduction. Id. at 442.

Similarly, in United States v. Spicer, No. 3:00CR141TSL-FKB-1, 2022 WL 16643098 (S.D. Miss. Aug. 9, 2022), the court granted compassionate release when, years after a defendant was convicted on bank robbery and firearm offenses and sentenced to six life sentences plus 10 years, it was discovered that the trial court mistakenly believed that the life sentences were statutorily mandated. Had the statute been correctly applied and the guidelines correctly calculated, the defendant faced a statutory maximum sentence of 25 years on the bank robbery convictions and 60 years on the firearm offenses. Id. at *3. In addition, his guidelines range on the bank robbery convictions was 262–327 months. The convictions and

21

sentences were affirmed on appeal and the defendant had not raised the issue in a § 2255 motion, prompting the court to note that his only avenue for relief was to establish that he was entitled to a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at *1, 3 n.9.

"Standing alone, these facts are extraordinary and compelling reasons for granting defendant relief from the multiple life sentences which the court erroneously ordered, at least to the extent that his sentence not exceed that which the court could lawfully have imposed for these offenses." Id. at *3. Citing the error, along with changes to stacking provisions under 18 U.S.C. § 924(c), the likelihood the defendant would have been offered a plea deal in the absence of the belief that he faced six mandatory life sentences, and the 18 U.S.C. § 3553(a) factors, the court reduced the defendant's sentence to 24 years plus one day. Id. at 4–8.

As set forth above, Oshay, after years of post-conviction wrangling on his own behalf and with the assistance of counsel, garnered a sentence reduction after this court determined that a mistake had been made at sentencing that was overlooked by the United States Probation Office, the prosecutor, defense counsel, and the court. Dominique was foreclosed from similar relief because he failed to recognize the claim until this court issued its April 2020 Memorandum Opinion and at that point was barred from pursuing it via a successive § 2255 petition. In addition, the Fourth Circuit denied his request for permission to file another petition. Nevertheless, the mistake in the PSR exists and had it been corrected prior to sentencing, Dominique would have faced a shorter guidelines sentencing range. "Allowing the procedural posture of the case to overrun an individual's liberty undermines the integrity of the Court system and the value society places on judges to get things right." United States v. Black, 388 F.Supp.3d 682, 689 (E.D. Va. June 7, 2019). See also McCoy, 981 F.3d at 288

22

(quoting United States v. Jones, 482 F.Supp.3d 969, 980–81(N.D. Cal. Aug. 27, 2020)) ("[W]hile the finality of sentences is an important principle, § 3582(c)(1)(A) 'represents Congress's judgment that the generic interest in finality must give way in certain individual cases,' and authorizes judges to implement that judgment.") Accordingly, the court concludes that Dominique has shown an extraordinary and compelling reason for a sentence reduction based on the Snead drug weight mistake in his PSR.[11]

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[11] To the extent Dominique argues that the commutation of Oshay's sentence provides a ground for a sentence reduction, courts are divided on the issue. Compare, e.g., United States v. Mason, No. 21 Cr. 499 (PAE), 2025 WL 1404642 (S.D.N.Y. May 15, 2025) (denying compassionate release based on presidential commutations for four codefendants because, among other reasons, "as a matter of constitutional principle, it is not for [the court] to probe behind that Executive Branch decision.") and United States v. McDonald, No. 94-cr-20256-1, 2020 WL 316674 (W.D. Tenn. June 8, 2020) (finding presidential commutation for codefendant did not create an extraordinary and compelling reason for a sentence reduction) with United States v. Ferguson, 536 F.Supp.3d 139, 143–44 (E.D. Mich. April 29, 2021) (finding commutation of codefendant's sentence to time served, when originally imposed it was 25 percent longer than movant's, was one of several extraordinary and compelling reasons supporting the grant of a sentence reduction). Because this court has found that Dominique has shown an extraordinary and compelling reason for a sentence reduction on other grounds, it does not address this issue. In addition, even if the court found that the commutation of Oshay's sentence created a sentencing disparity warranting a sentence reduction, it would reduce Dominique's sentence to 250 months for the reasons set forth herein.

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Dominique was a member of a long-running, well-organized conspiracy that distributed crack cocaine in Virginia. The PSR contains multiple references to Dominique being found in the vicinity of firearms, carrying firearms, and discharging firearms during the course of the conspiracy. PSR, ECF No. 345 ¶¶ 12, 14, 17, 19, 20, 21, 24, 26, 27, 28. The court is well-acquainted with the devastation wrought by drugs and firearms in the community and finds that the nature and circumstances of Dominique's offense weigh heavily against a sentence reduction.

Turning to the history and characteristics of the defendant, Dominique's childhood was difficult and traumatic. According to the PSR, most of Dominique's family abused cocaine and served periods of incarceration and probation related to drug abuse. Dominique, Oshay, and Kearrah were placed in foster care in 2005 when their mother was incarcerated.

24

Dominique was 15 at the time. Their grandmother requested and obtained custody of Oshay and Kearrah, but Dominique remained in foster care until the day he turned 18 in 2008. That same year his mother was murdered at the age of 34. Dominique had little contact with his father. Id. ¶¶ 103, 104.

Unsurprisingly, Dominique began engaging in criminal activity at an early age. His criminal record begins at 13, when he was found to have committed the offense of malicious wounding.  He also was charged with escape, possession of stolen property, possession and possession with intent to distribute crack cocaine, failure to stop for a police officer, and failure to stop for an accident. Id. ¶¶ 62–65. Between the ages of 18 and 23 when he was jailed on the instant offense, Dominique had convictions for discharging a gun in a public place, for ten counts of possession of marijuana, five counts for failure to appear, and seven counts for driving on a revoked or suspended license. Id. ¶¶ 66–86.

Since being incarcerated, Dominique has been found guilty of multiple disciplinary infractions including incidents of using another inmate's phone account or allowing another inmate to use his phone account, being absent from his assignment, being in an unauthorized area, refusing to obey an order, possessing drugs and drug paraphernalia, and disruptive conduct. Since 2021, Dominique has been found guilty in three incidents involving assault without serious injury and one incident of fighting another person while possessing a dangerous weapon (a broomstick). In addition, in 2025 he was found guilty of interfering with taking count, possessing a cell phone, and refusing to work. ECF No. 834-2. Dominque's security classification is "high," and his risk of recidivism also has been classified as "high." ECF No. 834-1.

25

Even accounting for Dominique's difficult and traumatic family history, and for his youth at the time he committed his offenses, he showed very little respect for the law before being incarcerated and has disregarded the rules of the institution since being incarcerated. While he has taken some classes to better himself and will have some family support when he is released from prison, his record while both in and out of prison weighs against a sentence reduction.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, if Dominique were sentenced today using the drug weight the court found in Oshay's revised PSR of 394.9 grams, he would have a total offense level of 37, which, with his criminal history category of V, would give him a guidelines sentencing range of 325–425 months. Applying the same 23 percent reduction that the sentencing court applied to the low end of his previous guidelines range of 360–life results in a sentence of 250 months.[12] This factor weighs in favor of a sentence reduction.

Considering the need to avoid unwarranted sentencing disparities, the court acknowledges that if Dominique's sentence on the drug charge is reduced to 250 months, it remains much higher than the sentence that Oshay served. However, the court is limiting the sentence reduction because of Dominique's troubling institutional history. A reduction of his sentence to 250 months balances the need to correct the mistake caused by the misunderstanding in the PSR based on Snead's testimony about drug weight with Dominique's

---

[12] Following his successful § 2255 motion, Oshay was entitled to a plenary resentencing, where the court not only reduced his drug weight, but also eliminated 2 points for criminal livelihood. Dominique is not entitled to a plenary resentencing on his motion for a sentence reduction and the court does not revisit the other calculations in his PSR. See Chavez-Meza v. United States, 585 U.S. 109, 119 (2018) (quoting United States v. Dillon, 560 U.S. 817, 826) ("a sentence modification is 'not a plenary resentencing proceeding.'")

multiple disciplinary infractions, his continued classification as a high security risk, and his having a high risk for recidivism.

Turning to the next factors, the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the court finds that a reduced sentence would be sufficient to accomplish these goals. A sentence of 250 months is substantial, and the court does not believe that additional time is necessary to achieve the punitive and deterrent goals of punishment. Nor does the court believe that additional time is necessary to provide Dominique with educational or vocational training, medical care, or other correctional treatment.

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Dominique's case. Given the circumstances of this case, including Domique's history and characteristics, the court concludes that a sentence of 250 months is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Dominique's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public. See 18 U.S.C. § 3553(a).

### III. CONCLUSION

For the above-stated reasons, the court will **GRANT in part** Dominique's motion for a sentence reduction, ECF No. 826, and reduce his sentence from 280 months to 250 months.

27

An appropriate order will be entered.

Entered: *April 1, 2026*

Michael F. Urbanski
Senior United States District Judge